# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-0334

BILL M. NOAH, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 24, 2016                                 Decided June 10, 2016)

*Jacques P. DePlois*, of Coos Bay, Oregon, for the appellant.

*Sarah W. Fusina* and *Selket N. Cottle*, with whom *Leigh A. Bradley*, General Counsel; and *Mary Ann Flynn*, Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, *Chief Judge,* and LANCE and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. LANCE, *Judge*, filed a concurring opinion.

SCHOELEN, *Judge*: The appellant, Bill M. Noah, appeals through counsel a November 28, 2014, Board of Veterans' Appeals (Board) decision that denied an effective date earlier than December 19, 2007, for the award of disability compensation for post-traumatic stress disorder (PTSD). Record of Proceedings (R.) at 2-11. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court, with oral argument, to address Mr. Noah's argument that he is entitled to an earlier effective date based on the fact that, in January 1982, VA provided misleading notice of the time required to submit evidence necessary to complete his December 1981 application

for disability compensation.[1]  For the reasons discussed below, the Court holds that the affirmatively misleading notice failed to satisfy the requirements of procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution.  Accordingly, the Court will vacate the Board's decision and remand the matter for the Board to assess the weight and credibility of the evidence and make the necessary factual finding whether Mr. Noah relied to his detriment on the misleading notice.

## I.  BACKGROUND

Mr. Noah served on active duty in the U.S. Army from November 1967 to December 1969, including service in Vietnam.  R. at 260-63.  On December 3, 1981, Mr. Noah filed a formal application for disability compensation for PTSD.  R. at 738-45.  Mr. Noah also submitted a statement in support of his claim in which he described numerous stressful, allegedly in-service incidents in Vietnam and asserted that he was experiencing nightmares and "emotional problems" as a result of his service.  R. at 742-45.

On January 18, 1982, VA sent Mr. Noah a letter noting that additional service records had been requested from the military, but that more information was needed from Mr. Noah. R. at 735.  The letter stated:

> Please tell us, as best you can recall, the dates and places of your assignments in Vietnam and your specific duty assignments at each location.  In particular, identify periods of combat.
>
> As the name "post traumatic stress neurosis" suggests, traumatic events are recognized as triggering emotional symptoms some time after the actual events.  Please identify for us as best you can the events or experiences in Vietnam which you believe are the "stressors" which are responsible for your present nervous condition.
>
> We must have postservice medical evidence to support your claim.  Can you obtain medical records for us of your treatment since service?  Or, if you wish, you may use the enclosed release of information forms to authorize our requests for those records.  *Please reply within 30 days.  If we have no reply within 60 days, we will assume that you have with[]drawn your claim*.

*Id*. (emphasis added).

---

[1]  Oral argument was held at the University of Toledo College of Law, in Toledo, Ohio.  The Court thanks the law school for its hospitality.

2

It is undisputed that Mr. Noah did *not* respond to any of the requests for information in the January 1982 letter. R. at 7. On December 19, 2007, more than 25 years later, Mr. Noah filed another application for disability compensation for PTSD. R. at 641-50. In this application, Mr. Noah circled "No" in response to the question: "Have you ever filed a claim with VA[?]" R. at 641. Following evidentiary development, in April 2009, the VA regional office (RO) granted Mr. Noah's claim for PTSD and assigned a 50% disability rating effective from December 19, 2007. R. at 907-19. Mr. Noah disagreed with the assigned effective date and perfected an appeal to the Board. R. at 54-55, 64-83.

In October 2011, Mr. Noah submitted a statement explaining that, in 1978, he had moved with his wife and children from Oregon to Alaska, to "get away from people" and obtain employment where he was able to work alone. R. at 44. Mr. Noah stated that after he continued to have problems with nightmares and irritability, his wife's friend, a physician, recommended that for "delayed stress" he seek treatment and benefits from VA in the "lower 48 states." *Id*. Mr. Noah moved with his family to Crescent City, California, and, as noted above, filed a claim for disability compensation in December 1981. *Id*. Mr. Noah explained that it had been his understanding from VA's January 1982 letter that "it was [his] responsibility to come up with medical evidence that [he] was suffering from [PTSD]." *Id*. Mr. Noah stated that he believed "the [VA] letter made it very clear that [he] was to respond to [VA] within 30 days and that if [he] did not come up with evidence within 60 days [VA was] going to close [his] file." *Id*. Mr. Noah reported that, in 1982, he had contacted the Del Norte Mental Health Clinic, but was unable to schedule an appointment for approximately 90 days. *Id*. In addition, he reported that although he was uninsured at the time, he tried to see a private psychiatrist. *Id*. Mr. Noah stated that the private psychologist's office indicated that it was unsure when an appointment might be scheduled, but because there was no "crisis," an appointment would not be scheduled for more than 30 days. *Id*. Mr. Noah further reported that he could not afford the $150 consultation fee. R. at 46. When he asked the psychiatrist's office whether it knew of any other available resources, he was told to try the Del Norte clinic. *Id*. Mr. Noah explained that he became discouraged and returned to Alaska. R. at 44, 46. Mr. Noah also stated that, although he could have provided to VA the requested information in 1982 with regard to the dates and locations of his combat experience, he believed that "VA first was interested in medical evidence that [he] was

3

suffering from [PTSD], and [that he] was to submit [medical evidence] along with the combat information in order for [VA] to continue with [his] claim." R. at 46. Finally, he asserted that had he known he had 1 year to submit the medical evidence, he would have done so by waiting for an appointment with the Del Norte clinic. *Id.*

Also in October 2011, Mr. Noah's wife submitted a similar statement describing Mr. Noah's efforts in 1982 to obtain medical evidence. R. at 48-50. Mr. Noah's wife stated that Mr. Noah became discouraged when he was unable to obtain medical evidence within 30 days of receiving the January 1982 letter and that he had decided to move back to Alaska without further pursuing his claim. R. at 48-50.

In November 2011, a private psychologist opined, based on her review of Mr. Noah's December 1981 statement in support of his claim and Mr. Noah's and his wife's October 2011 statements, that Mr. Noah was suffering from PTSD in 1981 and 1982, and that he more likely than not would have been diagnosed with PTSD had he seen a medical professional at that time. R. at 41-42.

VA denied an earlier effective date in a November 2012 Supplemental Statement of the Case (R. at 31-38) and, in September 2014, Mr. Noah testified at a Board hearing (R. at 836-52). Mr. Noah reiterated that when his efforts to obtain medical evidence within 60 days after the 1982 letter failed, he did not submit his combat evidence because he thought that he was required to submit both. R. at 841-44. Mr. Noah stated that his inability to obtain the medical evidence left him extremely discouraged and prompted him to return to Alaska. R. at 844-47. Mr. Noah's counsel conceded that Mr. Noah had "abandoned" his 1981 claim, but argued that Mr. Noah had a constitutional right not to be misled by VA's letter.[2] R. at 849-50.

In the November 2014 decision on appeal, the Board acknowledged that, in 1981, 38 C.F.R. § 3.158, provided that a claim will be considered abandoned "[w]hen evidence requested in connection with an original claim, . . . is not furnished within *1 year* after the date of request," and therefore the Board found VA's January 1982 letter, which informed Mr. Noah that he had to respond

---

[2] The Court notes that this appears to be the first time in the record that Mr. Noah raises a constitutional due process issue. It was only at the Court's invitation that he raised this issue on appeal in his supplemental memorandum of law and at oral argument.

within *30 to 60 days*, "misleading." R. at 7-8 (emphasis added). Nevertheless, the Board stated that "faulty advice, even if provided by a VA employee, cannot serve as the basis for paying benefits not otherwise authorized by law." *Id*. (citing *McTighe v. Brown*, 7 Vet.App. 29, 30 (1994)). The Board further noted that "'everyone dealing with the Government is charged with knowledge of federal statutes and lawfully promulgated regulations,'" such that VA's regulation governing abandonment of claims remained binding on Mr. Noah, regardless of whether he had actual knowledge of its content. *Id*. (quoting *Morris v. Derwinski*, 1 Vet.App. 260, 265 (1991)). As a result, the Board found that, even though Mr. Noah might have believed he had no more than 60 days to submit medical evidence and this discouraged and stopped him from trying to submit evidence, he remained subject to the 1-year abandonment provision in effect at the time. *Id*. The Board concluded that Mr. Noah had abandoned his 1981 claim; therefore, December 19, 2007, the date VA received Mr. Noah's new claim for PTSD, was the earliest effective date permitted by law. R. at 8-9. This appeal followed.

## II. THE PARTIES' ARGUMENTS

Mr. Noah does not argue that VA is equitably estopped from denying an earlier effective date as a result of the misleading January 1982 letter. Appellant's Brief (Br.) at 10. Instead, he argues that the Board erred when it failed to consider whether he was entitled to equitable tolling of the 1-year period to submit evidence following notice of an incomplete application. *Id*. at 10. Relying on *Smith v. Derwinski,* 2 Vet.App. 429, 433-34 (1992), which applied equitable tolling to 38 U.S.C. § 5110(b)(3)(A), Mr. Noah maintains that had he been informed of the correct time to submit evidence, there is every reason to conclude that he would have submitted the required evidence well within the 1-year period. Appellant's Br. at 11-12. Accordingly, he asks that the Court apply the doctrine of equitable tolling and reverse the Board's decision or, in the alternative, remand the matter for the Board to discuss the doctrine in the first instance. *Id.* at 12.

The Secretary argues that the doctrine of equitable tolling is not applicable because there is no filing deadline to toll. Secretary's Br. at 7-8. Although the 1982 letter misrepresented the length of time before Mr. Noah's claim might be considered abandoned, the Secretary asserts that VA's misrepresentation does not override the effective date requirements mandated by 38 U.S.C. § 5110(a)

5

and 38 C.F.R. § 3.400(b)(2)(i) and the prohibition imposed by Congress in 38 U.S.C. § 3003(a) (1981),[3] which provides that no benefits may be paid based on an application that has been abandoned. *Id*. at 10.

On October 30, 2015, the Court ordered the parties to submit memoranda of law addressing (1) how the doctrine of equitable tolling applies, if at all, to the 1-year period to submit evidence set forth in 38 U.S.C. § 3003(a) (1981) and 38 C.F.R. § 3.158 (1981);[4] (2) whether the 1-year period to submit evidence following VA's request for information is suspended where VA provides misleading notice regarding the time to submit evidence and the veteran detrimentally relies on that notice; and (3) if the 1-year period is suspended, whether Mr. Noah's 1981 claim for PTSD remained pending until December 2007 when he filed another application for disability compensation for PTSD.

In his supplemental memorandum of law, Mr. Noah concedes that there is no requirement that the Secretary inform a claimant of the 1-year period to submit evidence, but argues that the facts of this case are distinguishable from the facts in *Morris*, 1 Vet.App. at 265, where the Court charged the appellant with knowledge of the law. Supplemental Memorandum at 2-3. He maintains that

> the issue presented in this case, not presented in *Morris*, is a due process argument based on the fact that the Secretary did not "properly discharge his duty" [under section 3003(a) to inform him of the evidence necessary to complete his application] by affirmatively misleading [him] regarding the time limit in which to submit evidence.

*Id*. at 2-3. Mr. Noah asserts that the Court implied in *Edwards v. Peake*, 22 Vet.App. 29 (2008), that equitable tolling might apply in some situations where a due process violation is alleged, and that the facts of this case demonstrate that he detrimentally relied on constitutionally deficient notice. *Id*. at 3-5. As a result, Mr. Noah contends that his claim remained pending since 1981. *Id*. at 6-7.

The Secretary argues that equitable tolling is not applicable because (1) the 1-year period to submit evidence is not a statute of limitations; (2) this Court and U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have both recognized that equitable tolling does not apply to

---

[3] Currently codified, as revised, at 38 U.S.C. § 5103(a).

[4] Section 3.158 was initially promulgated on December 1, 1962, and has remained substantially the same despite revisions on December 10, 1963; November 9, 1987; September 30, 1997; and July 31, 2002. *See* 27 Fed. Reg. 11,887 (1962); 28 Fed. Reg. 13,362 (1963); 52 Fed. Reg. 43,063 (1987); 62 Fed. Reg. 51,278 (1997); and 67 Fed. Reg. 49,586 (2002).

effective date statutes; and (3) 38 U.S.C. § 3003 explicitly prohibits payment on an incomplete application if the evidence is not received within 1 year from the date of notification. Secretary's Supplemental Memorandum at 2-3. The Secretary asserts that the facts of this case are analogous to the facts in *OPM v. Richmond*, 496 U.S. 414 (1990), which held that equitable estoppel cannot compel payment of monetary benefits not authorized by law. *Id*. at 9-10. Assuming that the misleading notice and detrimental reliance on the notice might warrant suspending the 1-year period to submit evidence, the Secretary argues that Mr. Noah fails to demonstrate that he diligently pursued his legal remedies or that he relied to his detriment on the 1982 letter. *Id*. at 13-17.

## III. ANALYSIS

### A. Law

In 1981, 38 U.S.C. § 3003(a) imposed a duty on the Secretary, upon receipt of an incomplete application for benefits, to notify the claimant of the evidence necessary to complete the application. 38 U.S.C. § 3003(a) ("If a claimant's application for benefits under the laws administered by the Veterans' Administration is incomplete, the Administrator shall notify the claimant of the evidence necessary to complete the application."). Section 3003(a) further provided that "[i]f such evidence is not received within one year from the date of such notification, no benefits may be paid or furnished by reason of such application." *Id*.

Pursuant to his authority under 38 U.S.C. § 501(a), the Secretary promulgated 38 C.F.R. § 3.158, which provided that

> where evidence requested in connection with an original claim, . . . is not furnished within 1 year after the date of request, the claim will be considered abandoned. After the expiration of 1 year, further action will not be taken unless a new claim is received. Should the right to benefits be finally established, . . . compensation . . . based on such evidence shall commence not earlier than the date of filing the new claim.

38 C.F.R. § 3.158.

### B. *Morris*

In one of this Court's earliest cases, the Court found § 3.158 "entirely consistent with the command of 38 U.S.C. § 3003(a) regarding the disposition of incomplete claims." *Morris*, 1 Vet.App. at 264. Moreover, the Court in *Morris* rejected the appellant's due process argument that

7

he was never notified that claims are subject to abandonment pursuant to § 3.158, because the record supported a contrary view and the abandonment provisions "cannot be set aside or waived on grounds of alleged ignorance of regulatory requirements." *Id*. at 265; *see also Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947) (holding that everyone dealing with the Government is charged with knowledge of Federal statutes and lawfully promulgated agency regulations).

The facts in this case are distinguishable from the facts in *Morris* because, even assuming VA had no duty to notify Mr. Noah of the 1-year period to submit evidence, the Board conceded that VA provided *misleading* notice to Mr. Noah. Under these circumstances, the Court agrees with Mr. Noah that *Morris* does not control the disposition of this case. Thus, it is incumbent on the Court to determine whether the 1-year period may be equitably tolled and whether VA's misleading notice violated Mr. Noah's Fifth Amendment due process rights.

### C. Equitable Tolling

As noted above, Mr. Noah asks the Court to use its equitable tolling authority to extend the 1-year period to submit evidence following VA's January 1982 letter, thereby affording an earlier effective date based on his December 1981 claim. Although equitable tolling may be applied against the Government in certain cases, such as "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), equitable tolling is generally applied to toll a statute of limitations in order to bring a claim that would otherwise be time barred. *See*, *e.g.*, *Bove v. Shinseki*, 25 Vet.App. 136, 140 (2011) (holding that the 120-day period in 38 U.S.C. § 7266(a) is subject to equitable tolling). *But see Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) (holding that equitable tolling did not apply to claim brought under section 10(b) of the Securities Exchange Act of 1934 where purpose of limitation was clearly to serve as an absolute cutoff of liability).

8

For support of his argument that the 1-year period may be tolled, Mr. Noah relies on *Smith*, 2 Vet.App. at 433-34, which applied principles of equitable tolling to section 5110(b)(3)[5] based on VA's failure to comply with section 7722(d). There, the Court found that if VA had abided by its duty and timely informed Mr. Smith of the "specific request requirement for retroactive benefits" in section 5110(b)(3), "there is every reason to conclude . . . that he would have made the specific request well within the one-year time period." *Id*. at 434-35. As a result, the Court held that the 1-year filing requirement was equitably tolled. *Id*. at 435.

Mr. Noah's reliance on *Smith* is misplaced for at least two reasons. First, the Court's application of equitable tolling to section 5110 might be regarded as dictum in light of the fact that the Court ultimately affirmed the Board's decision because Mr. Smith failed to meet the statutory requirement in section 5110(b)(3)(B). *See Smith*, 2 Vet.App. at 435 (affirming the Board's factual determination that the appellant was not precluded from filing a claim for pension benefits for at least 30 days from the time he became permanently and totally disabled). Second, to the extent that *Smith* might be considered binding precedent, the Federal Circuit's decisions in *Andrews v. Principi* and *Rodriguez v. West* effectively overruled *Smith*. *See Andrews v. Principi*, 351 F.3d 1134 (Fed. Cir. 2003); *Rodriguez v. West*, 189 F.3d 1351 (Fed. Cir. 1999).

In *Andrews* and *Rodriguez*, the Federal Circuit addressed whether section 5110, the statute that governs the effective date of awards of VA benefits, may be equitably tolled. *See Andrews*, 351 F.3d at 1137-38; *Rodriguez*, 189 F.3d at 1354-55. The Federal Circuit rejected Mrs. Rodriguez's argument for an earlier effective date for the award of pension benefits based on the Secretary's purported failure to provide her with a formal claim form and assist her in the presentation of her claim in accordance with 38 U.S.C. §§ 5102 and 7722(d). *Rodriguez*, 189 F.3d at 1354-55. The Federal Circuit stated that nothing in those provisions "indicates, or even suggests, that the Secretary's failure to provide assistance to a claimant justifies ignoring the unequivocal command

---

[5] The current version of section 5110(b)(3) now appears in section 5110(b)(4), but is otherwise identical to the statute in effect in 1992. Section 5110(b)(4) provides that "[t]he effective date of an award of disability pension to a veteran described in subparagraph (B) of this paragraph shall be the date of application or the date on which the veteran became permanently and totally disabled, if the veteran applies for a retroactive award within one year from such date, whichever is to the advantage of the veteran." 38 U.S.C. § 5110(b)(4).

in 38 U.S.C. § 5110(a) that the effective date of benefits cannot be earlier than the filing of an application therefor." *Id.*

Subsequently, in *Andrews*, the Federal Circuit unequivocally stated: "[Section] 5110 does not contain a statute of limitations, but merely indicates when benefits may begin and provides for an earlier date under certain limited circumstances. . . . Section 5110 addresses the question of when benefits begin to accrue, not whether a veteran is entitled to benefits at all." 351 F.3d at 1138 (citation omitted). Hence, *Andrews* concluded that "[p]assage of the one-year period in [section] 5110(b)(1)[6] for filing a claim for disability compensation therefore does not foreclose payment for the veteran and thus cannot be construed as a statute of limitations." *Id.*; *accord McCay v. Brown*, 106 F.3d 1577, 1579 (Fed. Cir. 1997) (refusing to apply equitable tolling to 38 U.S.C. § 5110(g), even in the face of alleged misrepresentations by VA).

Relying on *Andrews* and *Rodriguez,* the Secretary argues that equitable tolling cannot be applied to section 3003(a) and § 3.158 because neither the statute nor the regulation is a bar to VA benefits and, therefore, neither contains a statute of limitations that may be tolled. Rather, as the Secretary notes, the statute and regulation govern the submission of evidence following notification that an application is incomplete and the date on which benefits may be paid. Specifically, section 3003(a) prohibits VA from making payment on an incomplete application if a claimant fails to submit additional evidence within 1 year from the date of notification of the evidence necessary to complete the application, and § 3.158(a) provides that after a claim has been abandoned, "[s]hould the right to benefits finally be established, . . . compensation . . . based on such evidence shall commence *not earlier* than the date of filing the new claim." 38 C.F.R. § 3.158(a) (emphasis added).

Because section 3003(a) and § 3.158(a) directly affect the date that payment of VA benefits may begin, the Court agrees with the Secretary that they operate similar to effective-date provisions for the award of VA benefits, which the Federal Circuit clearly held are not subject to equitable tolling. Previously, the Court has relied on *Andrews* and *Rodriguez* to hold in other contexts that the period for submitting evidence is not subject to equitable tolling. *See Edwards v. Peake*,

---

[6] Section 5110(b)(1) provides that "[t]he effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release." 38 U.S.C. § 5110(b)(1).

22 Vet.App. 29, 36 (2008), *aff'd sub nom. Edwards v. Shinseki*, 582 F.3d 1351 (Fed. Cir. 2009). In *Edwards*, the Court held that the period for submitting additional evidence in connection with a claim that has been denied, *see* 38 C.F.R. § 3.156(b), is not a statute of limitations that may be equitably tolled. 22 Vet.App. at 36. The Court concluded that "[Mr. Edwards's] equitable tolling argument must fail because he is 'ask[ing] this [C]ourt to waive the express statutory requirements for an earlier effective date for [service connection], which we cannot do.'" *Id.* at 36-37 (quoting *Andrews*, 351 F.3d at 1138).

Section 3003(a) expressly prohibits VA from paying or furnishing benefits on an application if evidence necessary to complete the application is not received within 1 year from the date of notification. *Accord* 38 C.F.R. § 3.158 (providing that "[a]fter the expiration of 1 year, further action will not be taken unless a new claim is received [and] [s]hould the right to benefits be finally established, . . . compensation . . . based on such evidence shall commence not earlier than the date of filing the new claim"). Like section 5110 and § 3.156(b), section 3003(a) and § 3.158 merely indicate when benefits may begin, not whether a veteran is entitled to benefits at all. Accordingly, the Court holds that the 1-year period provided in 38 U.S.C. § 3003(a) to submit evidence following VA's notification of the evidence necessary to complete the application cannot be construed as a statute of limitations and, therefore, is not subject to equitable tolling. Notwithstanding VA's misleading notice, the Court lacks authority to equitably toll the deadline to submit evidence. *See Andrews*, *Rodriguez* and *Edwards*, all *supra*.

### D. Procedural Due Process

The Fifth Amendment to the U.S. Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). An essential principle of procedural due process is that deprivation of a protected interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). The Court reviews questions of constitutional interpretation de novo. *See Buzinski v. Brown*, 6 Vet.App. 360, 365 (1994) ("VA resolution of questions of constitutional interpretation are

11

questions of law, to which no deference is accorded and accordingly this Court's review is de novo.").

Notice is constitutionally sufficient if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *see Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). If "these conditions are reasonably met, the constitutional requirements are satisfied." *Mullane*, 339 U.S. at 314-15. However, notice is of little value "unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id*. at 314; *see also Dealy v. Heckler*, 616 F. Supp. 880, 886 (W.D. Mo. 1984) ("Adequate notice requires accuracy in the description of legal rights and options available to parties.").

In *Cushman v. Shinseki*, the Federal Circuit held that a veteran's entitlement to disability benefits is a property interest protected by the Due Process Clause. 576 F.3d 1290, 1298 (Fed. Cir. 2009). The amount of process that is constitutionally due depends on the situation and generally requires consideration of three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Goldberg*, 397 U.S. at 263-71.

In applying this test, the Court is guided by the general principle that "due process" is a flexible concept, such that the process necessary to ensure fundamental fairness does not require that "the procedures used to guard against an erroneous deprivation . . . be so comprehensive as to preclude any possibility of error." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979); *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

*1.* Mathews *Factors*

i. Private Interest Affected

The first of the *Mathews* factors – the private interest affected by official action – favors Mr. Noah. Here, the official action is the provision of misleading notice to a disability benefits claimant

12

of the time to submit evidence necessary to complete an application. The private interest at stake is significant and obvious – "[a] [v]eteran's disability benefits are nondiscretionary, statutorily mandated benefits." *Cushman*, 576 F.3d at 1298; *see Ribaudo v. Nicholson*, 21 Vet.App. 137, 163 (2007) (en banc) (Schoelen, J., dissenting) (stating that the VA motto reflects a core value of our Nation, which is "'[t]o care for him who shall have bourne the battle for his widow, and his orphan'" (quoting President Abraham Lincoln)). Indeed, when Congress passed the Veterans' Judicial Review Act and the Veterans' Benefits Improvement Act of 1988, for the first time establishing judicial review for veterans' claims, "Congress emphasized the historically non-adversarial system of awarding benefits to veterans and discussed its intent to maintain the system's unique character." *See Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) (referring to H.R. Rep. No. 100-963, at 13 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5794-95). "The veterans benefits scheme is thus 'imbued with special beneficence from a grateful sovereign'" *Sneed v. Shinseki*, 737 F.3d 719, 728 (Fed. Cir. 2013) (quoting *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 1998) (Michel, J., concurring)), and in this context, "the importance of systemic fairness and the appearance of fairness carries great weight," *Hodge*, 155 F.3d at 1363. *See also Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1991) ("It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an 'approximate balance of positive and negative evidence.' By tradition and by statute, the benefit of the doubt belongs to the veteran.").

This is a "substantial" interest, which weighs heavily in favor of ensuring that an eligible veteran for VA disability benefits receives accurate predecision notice of the procedures and requirements to pursue his or her claim. Postdecision notice is not enough. Thus, even here, where Congress did not, in 38 U.S.C. § 3003(a), impose a duty on the Secretary to inform a claimant that he or she has 1 year to submit evidence necessary complete an application for benefits, the special beneficence afforded to our nation's veterans cannot tolerate notice that misleads the potential recipient of benefits due as a result of his or her service.[7]

---

[7] In fact, in 2003, the Federal Circuit found invalid 38 C.F.R. § 3.159(b) (2001), which incorrectly stated the time in which a claimant must submit evidence in support of his or her claim. *See Paralyzed Veterans of Am.* (*PVA*) v. *Sec'y of Veterans Affairs*, 345 F.3d 1334, 1346 (Fed. Cir. 2003) (stating that the erroneous notice is misleading and

## ii. Risk of Erroneous Deprivation

The second *Mathews* factor also favors Mr. Noah because the risk of erroneous deprivation of a claimant's entitlement to VA disability benefits was great as a result of VA's practices. The right to be heard – in this case, Mr. Noah's right to have his claim for disability benefits adjudicated – was significantly impeded by misleading notice regarding the time to submit necessary evidence. Consequently, the facts of this case are clearly distinguishable from the facts in *Morris*, where the Court in part rejected the appellant's due process argument that he was never notified that claims are subject to abandonment because "everyone dealing with the Government is charged with knowledge of federal statutes and lawfully promulgated agency regulations," 1 Vet.App. at 265 (citing *Fed. Crop Ins. Corp.*, 332 U.S. at 384-85). This is not a matter of whether a claimant is properly charged with knowledge of the relevant law. Rather, VA provided Mr. Noah inaccurate and misleading notice that gave him significantly less time than the law allowed to respond to VA's request for information.

Previously, the Federal Circuit has addressed the potential prejudice resulting from misleading notice regarding the time to submit evidence. In *Disabled American Veterans v. Secretary of Veterans Affairs*, the Federal Circuit found the Secretary's regulation, 38 C.F.R. § 19.9(a)(2)(ii) (2002), which gave an appellant "not less than 30 days" to respond to notice provided by the Board under 38 U.S.C. § 5103(a), contrary to 38 U.S.C. § 5103(b) (eff. June 5, 2001, to Dec. 15, 2003), which gave a claimant 1 year to submit evidence necessary to substantiate the claim. 327 F.3d 1339, 1348-49 (Fed. Cir. 2003). The Federal Circuit stated that the misleading notice is "especially prejudicial to veterans during the non-adversarial stages of disputes over benefits, when veterans rely on the strongly and uniquely pro-claimant character of the veterans' benefits system and pursue their statutory entitlements without the assistance of legal counsel." *Id*. at 1349. Similarly, in *PVA* the Federal Circuit noted that erroneous notice of the time limit to act in furtherance of a claim "ensures confusion and inefficiency, and is potentially prejudicial to the claimant." 345 F.3d at 1346; *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990) (holding that notice from the Social Security Administration that incorrectly informed Mr. Gonzalez that he had "the right to

---

may lead unsuspecting claimants to believe that they must provide the requested information or evidence within 30 days even though the statute unequivocally provides 1 year to submit evidence).

file another application at any time" was "sufficiently misleading" that it violated his due process rights); *see also Butland v. Bowen,* 673 F. Supp. 638, 641 (D. Mass. 1987) (holding that notice that specifically informed Ms. Butland that she might file another claim for Social Security disability benefits "at any time" – when, in fact, she had only 4 years in which to do so – was misleading to the extent that it "clearly violates the Constitutional guarantee of due process"); *Dealy*, 616 F. Supp. at 887 (finding that notice that "serves to mislead and deceive the disability applicant and denies the applicant the right to make an intelligent and informed decision" was "constitutionally deficient").

### iii. Governmental Interest

The final *Mathews* factor – "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," 424 U.S. at 335 – also supports Mr. Noah. It is difficult to conceive of any significant financial or administrative burden associated with the requirement that VA provide a claimant with accurate information. *See generally Gonzalez*, 914 F.2d at 1203 (stating that "[r]equiring notices to *accurately* state how a claimant might appeal an initial decision does not impose a significant financial or administrative burden on the Secretary" (emphasis added)). Although section 3003(a) did not require VA to provide Mr. Noah with notice that his claim for disability benefits may be deemed abandoned if he did not respond within 1 year from the date of notification of the evidence necessary to complete his application, once VA assumed the responsibility to inform Mr. Noah of a timeframe to respond, it had an affirmative obligation not to mislead him. As the Federal Circuit noted in *Barrett v. Nicholson*, "[t]he government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them." 466 F.3d 1038, 1044 (Fed. Cir. 2006). Moreover, once VA assumed the responsibility of providing notice of the time to submit evidence, it is unclear to the Court how any requirement that VA provide accurate information imposes a fiscal or administrative burden on VA.

Upon consideration of the substantial private interest at stake, the risk of erroneous deprivation inherent with misleading notice, and the absence of any fiscal or administrative burden on VA to provide accurate notice, the Court holds that VA's January 1982 notice letter failed to satisfy the requirements of procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution.

## 2. Detrimental Reliance

To prevail on his argument that VA award an earlier effective date for the grant of disability compensation for PTSD based on his 1981 application, Mr. Noah must also demonstrate that he relied to his detriment on the misleading notice. *See Day v. Shalala*, 23 F.3d 1052, 1066 (6th Cir. 1994) (although the denial notice "failed to satisfy the requirements of due process, the only claimants who could have been injured by the inadequacy are those who detrimentally relied on the inadequate denial notice"); *see also Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995) ("[A] plaintiff must demonstrate reliance on the allegedly defective denial notices."); *Burks-Marshall v. Shalala*, 7 F.3d 1346, 1349 (8th Cir. 1993) (the appellant has no standing to raise a due process issue where he "has not shown that the alleged deficiency in the notice had any connection in fact with h[is] own failure to seek review of" the denial of his claim). In this case, it is undisputed that the record is silent regarding Mr. Noah's PTSD claim until December 19, 2007, when Mr. Noah filed another application for disability compensation for PTSD.[8] Mr. Noah subsequently submitted lay and medical evidence and testified at a Board hearing explaining the circumstances preceding his

---

[8] The Secretary finds it significant that Mr. Noah failed to respond to VA's request for clarification of his stressors or to "contact VA to ask for more time, to provide combat and service information, or to ask for clarification." Secretary's Supplemental Memorandum at 10. The Secretary also finds it important that Mr. Noah pursued disability benefits for a left knee condition in May 1990 and asserts that Mr. Noah's response in 1990 to VA's request for additional evidence demonstrates that, in 1981 and 1982, he knew how to correspond with VA and diligently pursue his claim. *Id.* at 16. Although it is not the province of the Court to weigh Mr. Noah's credibility in the first instance, the Secretary's reliance on Mr. Noah's actions in 1990 as evidence of what he might have understood in 1981 and 1982 is inherently flawed. *Cf. Myers v. Principi*, 16 Vet.App. 228, 233 (2002) (finding that the Board's reliance on the veteran's later actions as "conclusive evidence" of the veteran's earlier intent "has no support in law or logic"). "Neither the Board nor the Court can look ahead in time to determine what happened in the past." *Id.*

Moreover, when determining whether Mr. Noah, in 1982, relied to his detriment on the constitutionally deficient notice, Mr. Noah's diligence thereafter is not a factor for consideration. Rather, Mr. Noah must demonstrate that he chose not to pursue his claim because he understood the notice to mean that his time to submit evidence was limited to 60 days. *See*, *e.g.*, *Burks-Marshall*, 7 F.3d at 1349-50 (although the claimant alleged that the notice of denial "gave the strong impression that her claims would not be lost if she filed a new claim later, rather than immediately appealing," the claimant lacked standing to raise a due process issue based on defective notice because she did "not say that after reading the notice she understood it to mean that she could apply again at any time for benefits for the periods involved in her denied claims, and that, for that reason, she decided to forego further review at the time"); *see also Day*, 23 F.3d at 1065-66 (where denial notice did not distinguish between reapplying for benefits and appealing, detrimental reliance occurred when, after receiving inadequate notice, the claimant filed a new application rather than continuing the appeals process, and was presented with a claim of res judicata or received less benefits than she would have had she successfully appealed); *cf. Jernigan v. Shinseki*, 25 Vet.App. 220, 229 (2012) (appellant failed to demonstrate detrimental reliance on purportedly defective notice regarding the time to return a formal application form, where record was entirely silent for 6 years *and* the appellant offered no explanation for the delay).

16

1981 application for benefits, his understanding from and reliance on the January 1982 notice letter, and why he stopped pursuing his PTSD claim when he determined that he was unable to obtain the requested medical evidence within 60 days of the 1982 notice letter. The Board did not assess the weight and credibility of this evidence, because it concluded, notwithstanding VA's misleading notice, that Mr. Noah remained subject to the 1-year abandonment provision in 38 C.F.R. § 3.158. This was error.

As discussed above, the January 1982 notice letter failed to satisfy the requirements of procedural due process and, therefore, if Mr. Noah successfully demonstrates that he relied to his detriment on the misleading notice, his December 1981 claim remained pending and unadjudicated. *See Cushman*, 576 F.3d at 1300 (finding that the presentation of improperly altered material evidence constitutes a due process violation and remanding the case for a de novo determination of Mr. Cushman's 1977 claim without the altered evidence). Accordingly, because "the evaluation and weighing of evidence are factual determinations committed to the discretion of the factfinder – in this case, the Board," *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013), the Court will vacate the Board's decision and remand the matter to the Board. On remand, the Board must assess the weight and credibility of the lay and medical evidence of record and determine whether Mr. Noah relied to his detriment on the 1982 misleading notice letter. If the Board concludes that Mr. Noah detrimentally relied on the misleading notice, the Board must determine whether the evidence establishes entitlement to disability compensation for PTSD based on Mr. Noah's 1981 claim. It goes without saying that the Board must support its decision with sufficient explanation and authority.

In pursuing the matter on remand, Mr. Noah is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance

with 38 U.S.C. § 7112 (requiring the Secretary to provide for "expeditious treatment" of claims remanded by the Court).

## IV. CONCLUSION

Upon consideration of the foregoing, the November 28, 2014, Board decision is VACATED and the matter is REMANDED for further proceedings consistent with this decision.

LANCE, *Judge*, concurring in the result: Although I agree with my colleagues that the November 28, 2014, Board decision should be remanded for the Board to determine whether the appellant detrimentally relied on the January 1982 misleading notice, I cannot join the majority's constitutional analysis, and so I am compelled to write separately.

I agree with the majority's conclusion that the one-year period to submit evidence set forth in 38 U.S.C. § 3003(a) is not subject to equitable tolling, as it is not a statute of limitations. I disagree, however, with the majority's decision to reach the merits of the appellant's due process argument. Although I concur that a remand is warranted for the Board to determine whether the appellant relied to his detriment on the January 1982 notice, the fact that the Court can remand the matter on that basis renders the majority's constitutional analysis unnecessary to the decision and thus premature. Rather than address whether the January 1982 notice violated the appellant's Fifth Amendment due process rights, I would exercise judicial restraint and wait to decide that question until the Board makes the requisite underlying factual determinations. *See Bucklinger v. Brown*, 5 Vet.App. 435, 440-41 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988))); *see also Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (holding that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion").

Judicial restraint is particularly appropriate in this case in light of the fact that neither party expressly raised the issue of due process in their initial briefing to the Court. *See* Appellant's Br. at 1-13; Secretary's Br. at 1-13. The appellant's sole argument in his initial brief is that the Board erred

by failing to discuss whether equitable tolling could be applied, as VA's January 1982 letter misrepresented the time to submit evidence set forth in 38 C.F.R. § 3.158(a) (1988). Appellant's Br. at 3-13. Indeed, he did not raise the issue of due process until his supplemental memorandum of law in response to the Court's October 30, 2015, supplemental briefing order. Appellant's Supplemental Memorandum at 2-3, 5. As a result, the constitutional issue is simply not sufficiently developed on appeal. Accordingly, a remand for additional factual development at the Board would build the proper foundation for the Court to make a fully informed decision when and if it is necessary to do so.

I also write separately to emphasize that the equitable relief that the appellant seeks is available at the Secretary's discretion pursuant to 38 U.S.C. § 503(a). This Court "is not a court of equity" and cannot mandate an award of benefits in the absence of statutory entitlement. *Moffitt v. Brown*, 10 Vet.App. 214, 225 (1997); *see Rosenberg v. Mansfield*, 22 Vet.App. 1, 5 (2007) ("The [U.S.] Supreme Court has held that the Appropriations Clause of the Constitution, U.S. Const. art. I, § 9, cl. 7, precludes the judiciary from ordering an award of public funds to a statutorily ineligible claimant on the basis of equitable estoppel." (citing *OPM v. Richmond*, 496 U.S. 414, 430 (1990))), *aff'd sub nom. Rosenberg v. Peake*, 296 F. App'x 53 (Fed. Cir. 2008). The Secretary, on the other hand, has the authority to grant equitable relief when he determines that an administrative error was committed by the Federal Government or any of its employees, or if a claimant suffered loss as a result of relying on an erroneous determination by VA. *See* 38 U.S.C. § 503(a). Given the Board's concession that the January 1982 notice was misleading, R. at 8, the appellant may wish to seek equitable relief pursuant to 38 U.S.C. § 503(a).