**Charles Roger ABSHER, et al.,**

v.

**The UNITED STATES.**

**Lloyd W. ABBOTT, et al.,**

v.

**The UNITED STATES.**

**Donald E. BAKER, et al.**

v.

**The UNITED STATES.**

**Osvaldo ALVARADO, et al.,**

v.

**The UNITED STATES.**

**Jimmie R. ARMSTRONG, et al.,**

v.

**The UNITED STATES.**

**Nos. 494–84C, 62–85C, 257–85C, 441–85C and 582–85C.**

United States Claims Court.

Dec. 3, 1985.

Jeffrey M. Glosser, Washington, D.C., for plaintiffs.

Stephen J. McHale, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

### OPINION

MARGOLIS, Judge.

The plaintiffs are disabled veterans retired from the uniformed services of the United States who challenge the constitutionality of a statute requiring that at least a portion of their longevity retirement pay be waived if they are to receive a disability pension. The plaintiffs claim the statute violates the equal protection component of

the due process clause of the Fifth Amendment in that waiver of retirement benefits is not required of other, similarly situated, federal retirees; plaintiffs seek to recoup the monies they were required to waive during the six years preceding the filing of their complaints in these consolidated cases. Further, the plaintiffs challenge the constitutionality of another statute barring dual compensation for retired disabled veterans.

The defendant United States seeks to uphold the constitutionality of the statutes on the ground that the statutes effectuate a legitimate governmental purpose in a rational way.

Jurisdiction of this Court is founded on 28 U.S.C. § 1491 (1982). Both parties have moved for summary judgment. Since the parties agree that the material issues of fact are not in dispute, summary judgment is appropriate. The Court holds for the defendant.

### FACTS

Plaintiffs are retired members of the uniformed services as defined by 10 U.S.C. § 1407(2) (1982):

(2) ... "uniformed service" means—

(A) any of the armed forces;

(B) the commissioned corps of the Public Health Service; or

(C) the commissioned corps of the National Oceanic and Atmospheric Administration.

As retirees, they are entitled to receive retirement pay based on the longevity of their employment. Retirement pay thus received is taxed as ordinary income. As disabled veterans, plaintiffs also qualify for disability pensions or compensation under the laws administered by the Veterans' Administration ["VA benefits"]. These VA benefits are exempt from taxation.

By statute, retirees of the uniformed services are precluded from receiving both their full retirement pay and VA benefits. 38 U.S.C. § 3104 (1982). Such retirees are required to waive a portion of their retire-

ment pay equal to any VA benefits they receive:

Any person who is receiving pay pursuant to any provision of law providing retired or retirement pay to persons in the Armed Forces, or as a commissioned officer of the National Oceanic and Atmospheric Administration or of the Public Health Service, and who would be eligible to receive pension or compensation under the laws administered by the Veterans' Administration if he were not receiving such retired or retirement pay, shall be entitled to receive such pension or compensation upon the filing by such person with the department by which such retired or retirement pay is paid of a waiver of so much of his retired or retirement pay as is equal in amount to such pension or compensation.

38 U.S.C. § 3105. Absent such a waiver, no VA benefits can be paid lawfully.

Other federal retirees who qualify for VA compensation are not required to waive a portion of their retirement pay to receive VA benefits. Federal employees retiring from the Civil Service in the executive, legislative and judicial branches of government; certain foreign service retirees of the Department of State; and certain retirees of the Central Intelligence Agency can receive both full retirement pay and full VA compensation.

The plaintiffs allege that this disparate treatment among federal retirees violates their right to equal protection under the Fifth Amendment to the U.S. Constitution.

### DISCUSSION

#### A. HISTORY OF THE DUAL BENEFITS PROHIBITION

Disability pensions have been provided to veterans since the Revolutionary War. Generally, a veteran is entitled to a pension for any disability resulting from a service-connected or service-aggravated injury. The amount of the pension depends on the degree to which the individual is disabled. The purpose of the benefits is two-fold—to compensate the veteran for physical losses,

pain and anxiety and to compensate the veteran for the earning impairment caused by the disability. *See* H.Con.Res. 69, 99th Cong., 1st Sess. p. 2 (Feb. 26, 1985).

Retirement pay was first authorized by Congress during the Civil War in 1861. Army, Navy and Marine Corps officers with more than 40 years of service could apply to the President to retire them with pay; there were also provisions for involuntary retirement. Act of August 3, 1861, ch. 42, 12 Stat. 289, 290. As the Supreme Court explained:

> The impetus for this legislation was the need to encourage or force the retirement of officers who were not fit for wartime duty. Thus, from its inception, the military nondisability retirement system has been "as much a personnel management tool as an income maintenance method,"; the system was and is designed not only to provide for retired officers, but also to ensure a "young and vigorous" military force, to create an orderly pattern of promotion, and to serve as a recruiting and re-enlistment inducement.

*McCarty v. McCarty*, 453 U.S. 210, 212–13, 101 S.Ct. 2728, 2730–31, 69 L.Ed.2d 589 (1981) (footnotes and citations omitted).

As early as 1890, Congress became concerned with the increasing drain of retirement pay and disability pensions on the public treasury. In 1890 and again in 1891 Congress prohibited the payment of what it regarded as "dual compensation":

> That hereafter no [disability] pension shall be allowed or paid to any officer, non commissioned officer, or private in the Army, Navy or Marine Corps of the United States, either on the active or retired list.

Act of March 3, 1891, ch. 548, 26 Stat. 1082.

The legislative history demonstrates that Congress intended the active and retired pay of members of the armed services to be compensation in full and that such members were not allowed, in addition, to receive pensions by reason of disability arising from the same service. *See* 21 Cong. Rec. 8507–08 (1890); *see also* 22 Cong.Rec.

2191–92 (1891). Since that time Congress has incorporated the same or similar language in succeeding pension acts. *See,* *e.g.,* Act of July 27, 1892, ch. 277, 27 Stat. 282; Act of May 9, 1900, ch. 385, 31 Stat. 171; Act of Feb. 6, 1907, ch. 468, 34 Stat. 879; Act of May 11, 1912, ch. 123, 37 Stat. 113; Act of June 5, 1920, ch. 245, 41 Stat. 982; Act of June 7, 1924, ch. 320, 43 Stat. 623.

It was not until 50 years later in 1941 that Congress eased the prohibition against receipt of both retired pay and disability pensions. Under the Act of June 30, 1941, Pub.L. No. 77–140, 55 Stat. 395, certain enlisted men were given the right to choose between receipt of either retired pay or disability pensions. Then, in 1944, Congress established the present system which applies to all members of the uniformed services. Retirees are no longer required to choose between retired pay or disability benefits; instead retirees are allowed to waive as much of their retirement pay as they are eligible to receive in VA disability benefits. 38 U.S.C. 3105 (originally enacted as the Act of May 27, 1944, Pub.L. No. 78–314, 58 Stat. 230). Since disability benefits are tax exempt, retirees receive more after-tax income when they waive retirement pay in favor of VA benefits.

### B. STANDARD OF REVIEW IN EQUAL PROTECTION CASES UNDER THE FIFTH AMENDMENT

Inasmuch as the legislative classification here does not impermissibly interfere with a fundamental right or operate to the peculiar disadvantage of a traditionally suspect classification such as race, religion or alienage, the plaintiffs concede that "strict judicial scrutiny" is not appropriate. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976).

■ Under the U.S. Supreme Court's prevailing formulation, socio-economic legislation such as 38 U.S.C. §§ 3104–05 is examined to see if the legislation advances some legitimate governmental purpose in a

rational way. *U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). Thus, there are two inquiries to be made:

1) Does the statute seek to achieve some purpose Congress may legitimately advance, and

2) Given the purpose, was there some rational basis for designating those chosen to be affected by the legislation?

If the purpose is legitimate and some rational basis exists for specifying the particular class designated to be affected by the legislation, this Court's inquiry ends and the statute must be upheld. *U.S. Railroad Retirment Board v. Fritz,* 449 U.S. at 179, 101 S.Ct. at 461. Legislation also carries with it a presumption of constitutionality that can be overcome only by a showing that Congress was arbitrary and irrational. *Duke Power Co. v. Carolina Environmental Supply Group, Inc.,* 438 U.S. 59, 83–84, 98 S.Ct. 2620, 2635–36, 57 L.Ed.2d 595 (1978).

### C. APPLICATION OF THE STANDARD OF REVIEW TO THE STATUTES

Given the legislative history of 38 U.S.C. §§ 3104–05, it is clear that one purpose of these statutes was to restrain spending. Few purposes are so clearly a legitimate congressional objective.

Another purpose of the statutes was to limit the amount of compensation certain classes of individuals could receive as a result of military or uniformed service. As the U.S. Court of Claims noted, placing "a ceiling on the amount of compensation certain classes of individuals can receive from the federal government ... is, of course, a proper object of congressional concern." *Puglisi v. United States,* 215 Ct.Cl. 86, 95, 564 F.2d 403, 409 (1977).

In 1891, Congress clearly stated its intention that military retirees should receive only retired pay as full compensation for their services:

It has always been understood that, when an officer was placed upon the retired list and received three-fourths of his pay, that was in lieu of compensation for all services performed in the Army, and in lieu of a pension.... When the Mexican [War] pension bill was passed ... the first thing we knew there were one hundred and fifty-six officers upon the retired list of the Army drawing pensions.... This amendment is simply to carry out what we started at the last session—which has always been the understanding of Congress—that officers on the active and retired lists should not draw any pensions.

22 Cong.Rec. 2191 (1891).

■ The congressional debates also evince a concern with the rising cost of pensions and a belief that dual compensation was excessive and improper. 21 Cong. Rec. 8507–08 (1890); 22 Cong.Rec. 2191–92 (1891).

The subject of the legislation is directed towards a legitimate governmental purpose, and thus the first inquiry mandated under the "rational basis" test is satisfied. As to whether or not the legislation carries out this legitimate purpose in some rational manner, the Court must look to the plaintiffs' class and determine if there is some basis for treating this class differently from others.

As retirees of the uniformed services, plaintiffs are entitled to commissary, recreational, travel and health benefits in addition to their retired pay. *See, e.g.,* Army Regs. 40–3, ¶ 4–11 (Feb. 15, 1985) (medical services); 60–20, ¶ 2–9 (Aug. 1, 1984) (exchange privileges); 30–19, App. B (October 15, 1982) (commissary privileges); 215–2, ch. 2 (August 26, 1985) (package stores; recreational privileges; morale support activities). Such benefits are not generally available to disabled veterans retired under other public or private retirement programs. Unlike other retirement programs, the uniformed services have no minimum retirement age; members can retire after twenty years service regardless of their age. *See* 10 U.S.C. § 3911 (1982). The average age of regular enlisted personnel at retirement is 42, and regular officers on

average retire at age 46. Office of the Actuary, Defense Manpower Data Center, *FY 1983 Deparment of Defense Statistical Report on the Military Retirement System,* 91 (1984). As such, uniformed service retirees are likely to receive benefits for longer periods of time than are other retirees.

Given these facts and the preferential treatment deservedly provided retirees of the uniformed services, Congress may well have decided that prohibiting this class from receiving both disability pensions and retirement pay was warranted. The special benefits accorded retirees of the uniformed services are such that this class of individuals is not situated similarly to other groups that are not required to waive retirement pay to receive tax-free VA benefits. To the extent that the plaintiffs and other federal retirees are similarly situated, there is a rational basis for limiting the amount of compensation the plaintiffs receive.

Congress has considered amending 38 U.S.C. §§ 3104–05 numerous times. *See, e.g.,* H.R. 867, 99th Cong., 1st Sess. (1985); H.R. 1366, 99th Cong., 1st Sess. (1985); H.R. 468, 98th Cong., 1st Sess. (1983); H.R. 325, 98th Cong., 1st Sess. (1983); S. 783, 97th Cong., 1st Sess. (1981); H.R. 517, 97th Cong., 1st Sess. (1981); H.R. 2141, 97th Cong., 1st Sess. (1981); S. 1907, 96th Cong., 1st Sess. (1979); H.R. 823, 96th Cong., 1st Sess. (1979); H.R. 722, 95th Cong., 1st Sess. (1977); H.R. 1165, 94th Cong., 1st Sess. (1975). Apparently, Congress is still satisfied that this legislation represents sound fiscal policy.*

Congress may view the option that taxable retirement pay be waived in favor of tax exempt disability compensation as ameliorating any hardship inflicted on those subject to the statutes. Congress has reiterated its intention that disability benefits remain tax exempt. H.Con.Res. 69, 99th Cong., 1st Sess. p. 2 (Feb. 26, 1985); S.Con.

Res. 20, 99th Cong., 1st Sess. p. 2 (Feb. 26, 1985).

The Court finds that the class identified in the challenged legislation is rationally related to the purposes advanced. Thus, the statutes do not violate the equal protection component of the Fifth Amendment.

If plaintiffs believe they are not adequately compensated and wish to have their compensation package reviewed, the proper forum for such review is Congress, not this Court.

CONCLUSION

The Court finds the legislation constitutionally permissible. For the reasons discussed, the plaintiffs' motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.

The Clerk will dismiss the complaints.

---

* In an affidavit, the government stated that the waiver requirement saves the Air Force nearly 590 million dollars per year. During oral argument, the government estimated savings for all uniformed services at more than two billion dollars per year.