# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-4382

THOMAS H. BUFFINGTON, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 10, 2019         Decided July 12, 2019)

  *Stacy A. Tromble*, with whom *Raymond J. Kim* and *Barton F. Stichman* were on the brief, all of Washington, D.C., for the appellant.

  *Debra L. Bernal*, with whom *Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Joan E. Moriarty*, Deputy Chief Counsel; and *Michael M. Epsten*, Non-Attorney Practitioner, were on the brief, all of Washington, D.C., for the appellee.

  Before GREENBERG, MEREDITH, and FALVEY, *Judges*.

  MEREDITH, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

  MEREDITH, *Judge*: The appellant, Thomas H. Buffington, through counsel appeals a July 20, 2017, Board of Veterans' Appeals (Board) decision that denied entitlement to an effective date earlier than February 1, 2008, for the reinstatement of VA benefits. Record (R.) at 1-13. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court to address whether the Secretary's regulation, 38 C.F.R. § 3.654(b)(2), which governs the effective date for the recommencement of VA benefits following a period of active duty, is inconsistent with 38 U.S.C. § 5304(c), which prohibits concurrent receipt of active service pay and pension, compensation, or retirement pay. For the reasons discussed below, the Court holds that § 3.654(b)(2) is a valid exercise of the Secretary's broad rulemaking authority, pursuant to 38 U.S.C. § 501, to issue regulations necessary to carry out the laws administered by VA and is not inconsistent with 38 U.S.C. § 5304(c). Accordingly, the Court will affirm the Board's decision.

# I. BACKGROUND

The appellant served on active duty in the U.S. Air Force from September 1992 to May 2000, and in the Air National Guard from July 2003 to June 2004, from November 2004 to July 2005, in December 2009, and from February 2016 to May 2016. R. at 14-21. In March 2002, he was granted entitlement to VA disability compensation for tinnitus, rated 10% disabling. R. at 1261-64, 1272-78. The appellant submitted a VA Form 21-8951, Notice of Waiver of VA Compensation or Pension to Receive Military Pay and Allowances, in August 2003. R. at 1233. This form reflects that he elected to receive military pay and allowances for the performance of active and inactive duty in lieu of VA benefits and provides that the "waiver will remain in effect, while [he was] entitled to receive VA disability payments, unless [he] notif[ies] VA otherwise in writing." *Id.*

In October 2003, VA advised him that it was proposing to terminate his VA benefits, effective July 20, 2003, because his National Guard unit had been activated on July 21, 2003. R. at 1229. In response, the appellant executed and submitted VA Form 21-8951-2, in which he again elected to waive VA benefits in lieu of military pay. R. at 1224-25. In December 2003, VA informed him that it had stopped his benefits the day before he was recalled to active duty. R. at 1222-23. The letter further instructed: "When you have been released from active duty, please provide our office with a copy of your DD[-]214, so that we may re[]instate your benefits." R. at 1222.

Following two periods of active duty—July 2003 to June 2004, and November 2004 to July 2005—in January 2009, the appellant requested that his benefits be reinstated. R. at 1210. In August 2009, a VA regional office (RO) reinstated his VA disability compensation, effective February 1, 2008. R. at 1196-99. The RO informed him that, in December 2003, "[w]e . . . told you to provide us with copies of your DD Form 214[] upon your release from active duty so that we could re[]instate your benefits." R. at 1196. The RO then explained: "We received your request for the reinstatement of your VA [c]ompensation benefits more than [1] year after your release from active duty. By law we are only permitted to make payments retroactive to [1] year prior to the date we received your request." R. at 1197.

The appellant filed a Notice of Disagreement (NOD), asserting that the RO's December 2003 letter "did not address the [1-]year requirement for informing . . . VA of [his] release from active duty," R. at 1193, and he perfected an appeal to the Board, R. at 1153-55, 1159-81. He also

testified at a November 2015 Board hearing that, in 2003, VA did not clarify that there was a time line for when he needed to submit his DD-214s to reinstate benefits. R. at 643-44. He explained that, between 2003 and 2009, he had three different activations and "kind of forgot about it." R. at 643. He said: "I'm in the Guard and it was kind of like my full-time job." *Id.*

In the July 20, 2017, decision on appeal, the Board concluded, as a matter of law, that VA cannot resume payment of the appellant's benefits more than 1 year prior to the date of his claim for reinstatement, which was received on January 20, 2009. R. at 7-9 (citing 38 U.S.C. § 5304(c), 38 C.F.R. §§ 3.31, 3.654(b)(2) (2017)). Regarding the appellant's contention that VA did not provide notice as to the time to submit copies of his DD-214s, the Board found that the VA Form 21-8951, submitted by him in August 2003, and the RO's December 2003 letter "clearly informed [him] that the consequence of failing to notify VA of his cancelling his waiver of VA benefits would be the continued waiver of those benefits." R. at 9-10. Thus, applying § 3.654(b)(2) to the undisputed facts, the Board denied an effective date earlier than February 1, 2008, for the reinstatement of VA benefits. R. at 1-13. This appeal followed.

## II. ANALYSIS

### A. The Parties' Arguments

The appellant argues that the language of 38 U.S.C. § 5304(c) is clear—VA must "withhold or suspend a veteran's benefits *only* 'for any period for which such person receives active service pay.'" Appellant's Brief (Br.) at 6 (quoting 38 U.S.C. § 5304(c)). He asserts that § 3.654(b)(2) is inconsistent with the statute because section 5304(c) "does not predicate payment or reinstatement of benefits upon notice by the veteran." *Id.* at 10. He further asserts that reading section 5304(c) in the context of 38 U.S.C. § 1110(a), which provides that VA "will pay" disability compensation benefits once service connection is established, demonstrates that "Congress has *prohibited* VA from withholding or suspending benefits due to a veteran's receipt of active pay during any period . . . section 5304(c) does not encompass." *Id.* at 9. He therefore maintains that the regulation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and seeks reversal of the Board's decision denying an effective date earlier than February 1, 2008. *Id.* at 10-11.

In the alternative, he argues that equitable tolling is warranted because "the Board treated [§] 3.654(b)(2) as a statute of limitations," and VA effectively misled him into believing that there

3

was no deadline to notify VA that he had been released from active duty. *Id.* at 13. Also in the alternative, he argues that, because he has a property interest in VA benefits and he relied to his detriment on the allegedly misleading notice, VA violated his constitutional right to due process. *Id.* at 14-16.

The Secretary argues that VA promulgated § 3.654(b)(2) pursuant to his broad congressional authority under 38 U.S.C. § 501 to "'prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws.'" Secretary's Br. at 6 (quoting 38 U.S.C. § 501). He asserts that section 5304(c) does not address the recommencement of payments; rather, "Congress unambiguously delegated the authority to create the procedural structure to prevent duplication of benefits to VA." *Id.* at 9. In that regard, he maintains that the regulation "effectively establishes 'the nature of proof and evidence and the method of taking and furnishing them' for purposes of resumption of benefits." *Id.* at 10 (quoting 38 U.S.C. § 501(a)). The Secretary further maintains that, when sections 5304 and 1110 are read together, a gap remains, and VA's regulation should be afforded deference. Secretary's Br. at 11-12 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)).

In response to the appellant's argument for equitable tolling, the Secretary asserts that the doctrine is not applicable to § 3.654(b)(2) because the regulation is not a statute of limitations; there is no filing deadline to toll. *Id.* at 16-18. He also asserts that the Board did not "treat" the regulation as a statute of limitations and, in either event, the appellant fails to demonstrate that VA provided misleading notice. *Id.* at 18-20. The Secretary similarly maintains that the appellant's due process argument must fail because he has not demonstrated that VA provided misleading notice or that he relied to his detriment on the notice. *Id.* at 20-22. Finally, he avers in the alternative that, even assuming the notice was improper, the appellant is charged with knowledge of the regulatory requirements. *Id.* at 22-23 (citing *Morris v. Derwinski*, 1 Vet.App. 260, 265 (1991)).

In his reply brief, the appellant responds that the Secretary's argument would lead to an absurd result—that the Secretary could promulgate regulations pursuant to section 501, even though the "regulation conflicts with other statutes with which the Secretary is obligated to comply." Reply Br. at 2-3. He asserts that there is no gap to fill; rather, "[§] 3.654(b)(2)'s [1]-year requirement . . . imposes on veterans a requirement that the relevant statutes simply do not contain . . . . [and] violates VA's obligation to compensate veterans who are not on active duty for

4

their service-connected disabilities." *Id.* at 3-4. The appellant maintains that he was effectively misled regarding the time to file a claim to reinstate benefits because the 2003 letter did not include information regarding the 1-year requirement and, consequently, the Court should reverse the Board's decision on the grounds of equitable tolling or a violation of his right to due process. *Id.* at 6-13. Regarding notice, he contends that the Secretary's reliance on *Morris* is misplaced because, in that case, the veteran received proper notice, whereas here, the notice effectively misled him as to what was required to reinstate his benefits. *Id.*

Prior to oral argument, the appellant also submitted a Notice of Supplemental Authorities, consisting of six Board decisions dated from February 2015 to December 2018. The Board decisions essentially reflect that, if a veteran erroneously receives disability compensation and active duty pay or military drill pay, VA may recoup the compensation benefits to which the veteran was not entitled, i.e., for the period beginning on entry to active service and ending upon the release from active duty. *See*, *e.g.*, BVA 12-08 113 (Dec. 19, 2018). At oral argument, the appellant maintained that these decisions demonstrate that VA's regulation is arbitrary and capricious. Oral Argument at 23:30-23:40, *Buffington v. Wilkie*, U.S. Vet. App. No. 17-4383 (oral argument held Apr. 10, 2019). He argued that the decisions reflect that veterans who fail to inform VA of their return to active duty are treated better than veterans, like himself, whom he asserts are "penalized" for doing the right thing. *Id.* at 24:20-24:50. He explained that, had he received dual compensation, VA would only recoup the compensation paid during his period of active duty; but now, § 3.654(b)(2) operates to limit his VA compensation to 1 year prior to his claim for recommencement. *Id.* at 23:30-24:50.

### B. Law

Under certain circumstances, the United States "will pay to any veteran" compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service." 38 U.S.C. § 1110. However, as early as 1891, Congress has prohibited members of the uniformed services from receiving VA benefits and active service pay. Act of March 3, 1891, ch. 548, 26 Stat. 1082; *see Absher v. United States*, 9 Cl. Ct. 223, 224-25 (1985) (discussing the legislative history of the prohibition against dual compensation), *aff'd*, 805 F.2d 1025 (Fed. Cir. 1986).

5

The prohibition against the duplication of benefits now appears in section 5304 of title 38, U.S. Code, and provides in pertinent part: "Pension, compensation, or retirement pay on account of any person's own service shall not be paid to such person for any period for which such person receives active service pay." 38 U.S.C. § 5304(c). "Active service pay" is defined as "pay received for active duty, active duty for training[,] or inactive duty training." 38 C.F.R. § 3.654(a) (2019).

Congress generally allows members of the Reserve or National Guard who are called to active duty to elect to receive, for that duty, the pension, compensation, or retirement pay that the member had been receiving because of his or her earlier service, or, upon waiver of those payments, the pay and allowances authorized by law for the period of active service. 10 U.S.C. § 12316. In 1962, VA promulgated 38 C.F.R. § 3.654(b), which establishes the effective date for the discontinuance of VA benefits when veterans return to active duty status and the effective date for recommencement of payments following their release from active duty. Pertinent to the issue on appeal, § 3.654(b)(2) provides:

> Payments, if otherwise in order, will be resumed effective the day following release from active duty if claim for recommencement of payments is received within 1 year from the date of such release: otherwise payments will be resumed effective 1 year prior to the date of receipt of a new claim. Prior determinations of service connection will not be disturbed except as provided in [38 C.F.R.] § 3.105. Compensation will be authorized based on the degree of disability found to exist at the time the award is resumed. Disability will be evaluated on the basis of all facts, including records from the service department relating to the most recent period of active service. If a disability is incurred or aggravated in the second period of service, compensation for that disability cannot be paid unless a claim therefor is filed.

38 C.F.R. § 3.654(b)(2).

Here, there is no dispute that the appellant did not file a claim for recommencement of disability compensation until January 20, 2009, more than 1 year after his release from his second and third periods of active duty. He contends only that section 5304(c), together with section 1110, requires VA to reinstate his benefits as of the date following his release from active duty or, in the alternative, that the Court find that VA provided misleading notice warranting equitable tolling or a finding that VA violated his right to due process. The Court will address his statutory argument first.

C. Statutory Interpretation

"When a statute is at issue, we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000). "The

6

statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007). In assessing the language of a statute, courts review the overall statutory scheme "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'" *Roper*, 20 Vet.App. at 178 (quoting SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 46:06 (6th ed. 2000)).

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, if the statute is silent or ambiguous with respect to the specific issue, the question becomes whether the agency's interpretation is based on a permissible construction of the statute. *Id.* at 843. The agency's interpretation will not be set aside unless it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *see Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53 (2011). The interpretation of a statute is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

*1.* Chevron *Step One*

As noted above, section 1110 generally establishes that, under certain circumstances, the United States "will pay" disability compensation for disability resulting from or aggravated by military service. 38 U.S.C. § 1110. By its terms, it does not establish when disability compensation payments shall begin or impose any limitation on continued receipt of compensation benefits. *Cf.* 38 U.S.C. § 5110 (Effective dates of awards). Section 5304(c), however, imposes one such limitation: VA "shall not" pay pension or compensation benefits to any person on account of that

person's service during any period for which that person receives active service pay. 38 U.S.C. § 5304(c). By its terms, section 5304(c) establishes an unequivocal bar to dual compensation.

The appellant thus maintains that, when sections 1110 and 5304(c) are read together, Congress's intent is clear and VA has no discretion: "VA must suspend or withhold benefits, but *only* 'for any period for which such person receives active service pay.'" Appellant's Br. at 9 (quoting 38 U.S.C. § 5304(c)); Oral Argument at 2:50-3:20. However, the word "only" does not appear in the statute and the Court will not insert limiting language that is not present in the statute. *See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."). The statutory language does not address the effective date for the discontinuation of benefits or, as relevant here, the effective date and terms for the recommencement of benefits.

To the contrary, Congress separately addressed the effective date for the discontinuation of benefits by reason of active service pay in section 5112(b)(3)—benefits "shall be" discontinued the day before active service pay begins. 38 U.S.C. § 5112(b)(3). Although Congress did not separately address the effective date for the recommencement of benefits, the Court will not adopt the appellant's construction of sections 1110 and 5304(c) as the governing authority because doing so would effectively render Congress's specific directive in section 5112(b)(3) superfluous. *See Sharp v. United States*, 580 F.3d 1234, 1238 (Fed. Cir. 2009) (noting that the canon against surplusage requires courts to avoid an interpretation that results in portions of text being read as meaningless); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001). In sum, Congress did not speak to the precise question at issue: Whether the Secretary may predicate the effective date for the recommencement of benefits on the date of the veteran's claim.[1] The Court thus agrees with the Secretary that neither section 5304(c) individually, nor sections 5304(c) and 1110 together, address how interruptions in the payment of benefits shall be administered. *Cf.* 38 U.S.C. § 5313 (establishing *both* the beginning and ending date of the limitation on payment of compensation to persons incarcerated for conviction of a felony).

Because there is a gap in the statute, the Court must now turn to step two of the *Chevron* analysis, "whether the agency's answer is based on a permissible construction of the statute."

---

[1] The appellant does not dispute that the Secretary may require a veteran to notify VA that a term of active duty has ended. His argument is limited to whether the Secretary may "tie the *effective date* of the resumption of benefits to the date of such notification because doing so conflicts with the plain language of 38 U.S.C. § 5304(c)." Appellant's Br. at 10 n.3.

*Chevron*, 467 U.S. at 843; *see id.* ("'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'" (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)).

## *2.* Chevron *Step Two*

Congress conferred on the Secretary broad authority to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws." 38 U.S.C. § 501(a). That authority includes establishing "regulations with respect to the nature and extent of proof and evidence . . . in order to establish the right to benefits under such laws," "the forms of application by claimants under such laws," and "the manner and form of adjudications and awards." 38 U.S.C. § 501(a)(1), (2), (4).

The Secretary asserts that § 3.654(b) fills the gap left by Congress by "delineating the procedure by which benefits are suspended and reinstated as a veteran comes in and out of active service." Secretary's Br. at 12. He maintains that VA is charged with managing the flow of benefits for millions of veterans and asserts that his regulation operates in a veteran-friendly manner, affording veterans a 1-year grace period to inform VA that they have been released from active duty or, in the alternative, to have payments resumed 1 year prior to the date of the claim. Oral Argument at 28:25-28:52, 31:15-32:00; *see* Secretary's Br. at 10.

The appellant counters that § 3.654(b)(2) is inconsistent with and not necessary or appropriate to carry out the requirements of section 5304(c). Oral Argument at 6:15-6:42. In this regard, he maintains that the regulation does nothing to prevent the duplication of benefits and imposes a substantive limitation on entitlement to VA benefits that is contrary to the mandate in section 1110 that the United States "will pay" disability compensation. *Id.* at 4:48-5:56. Although the Court is sympathetic to the appellant's circumstances, the Court is not persuaded by his arguments.

As argued by the Secretary, VA promulgated § 3.654(b) pursuant to his broad authority derived from section 501; the regulation creates a mechanism by which VA manages compensation benefits when veterans return to active duty, § 3.654(b)(1), and provides a procedure and structure for recommencing benefits upon release from active duty, § 3.654(b)(2). Oral Argument at 27:00-27:30. In that general sense, the regulation effectively establishes "the nature and extent of proof and evidence and the method of taking and furnishing them" and falls within the Secretary's

authority "to determine the forms of application [for] benefits, and the manner of awards." Secretary's Br. at 10-11. A veteran must file a claim for recommencement and the regulation provides for an earlier effective date of the day following discharge if the claim is received within 1 year from the date of release from active duty or, in the alternative, 1 year prior to the date of the claim. 38 C.F.R. § 3.654(b)(2).

The Secretary explained that, when veterans return to active duty, their awards of compensation benefits are terminated. Oral Argument at 32:22-33:18, 42:20-43:33; *see* VA Gen. Coun. Prec. 05-95 at 2 (Feb. 6, 1995) (providing that VA's action of discontinuing compensation upon return to active duty is suggestive of an adjudicative determination terminating the veteran's award, such that the continuity of a veteran's rating is interrupted). He further clarified that, although service connection remains in place, it is necessary for VA to readjudicate and evaluate a veteran's service-connected disability upon return from active duty to ascertain the current level of severity, *see* 38 C.F.R. § 3.654(b)(2) (providing that "[c]ompensation will be authorized based on the degree of disability found to exist at the time the award is resumed"), and VA's regulation reasonably requires a veteran to file a claim for recommencement. Oral Argument at 42:20-43:33. As for the 1-year period, the Secretary analogized it to 38 U.S.C. § 5110(b)(1), which provides that "[t]he effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within [1] year from such date of discharge or release." *Id.* He asserted that, just as Congress provided 1 year for a veteran to file a claim following discharge, his regulation provides the same reasonable period. *Id.*

In that regard, the Court has previously upheld time limitations for filing a claim and "1 year" is generally used throughout title 38. *See* Oral Argument at 31:15-31:20; Secretary's Br. at 14-15. For example, in *Jernigan v. Shinseki*, the Court addressed whether the Secretary's creation of a time limit to file a formal application form was a reasonable interpretation of Congress's direction that VA prescribe the "form" in which applications for benefits may be made. 25 Vet.App. 220, 225-27 (2012). The Court found in the affirmative, explaining that the most appropriate definition of "form" is an "[e]stablished behavior or procedure, usu[ally] according to custom or rule," BLACK'S LAW DICTIONARY 723 (9th ed. 2004), and that "[u]nder this definition, it is eminently reasonable to interpret 'form'—that is, the procedure for filing an application for benefits—to include a timing requirement, particularly in the context of VA, where finality often

10

plays a crucial role." 25 Vet.App. at 226. The Court rejected Ms. Jernigan's assertion that "VA is not permitted to disguise the creation of additional requirements or limitations as interpretive regulations," *id.* at 226 (internal quotation marks omitted), explaining that "Congress *expressly* delegated authority to VA to determine the appropriate 'forms of application[,]'" *id.* at 226-27 (quoting 38 U.S.C. § 501(a)(2)). The Court thus concluded that Congress's "express delegation, along with the Court's determination that the Secretary's interpretation of 'form' to include a timing requirement is reasonable, is sufficient to hold that [the Secretary's regulation] is not 'arbitrary or capricious in substance, or manifestly contrary to the statute.'" *Id.* at 227 (quoting *Mayo Found. for Med. Educ. & Research*, 562 U.S. at 53).

Similarly, here, the Secretary promulgated § 3.654(b)(2) pursuant to Congress's express delegation to establish "forms of application." 38 U.S.C. § 501(a)(2). Although Congress chose to govern the date that VA benefits shall be discontinued upon a veteran's return to active duty, 38 U.S.C. § 5112(b)(3), Congress was silent regarding when and how VA shall resume the payment of benefits after a veteran's release from active duty. The Secretary filled the gap left by Congress and, therefore, contrary to the appellant's contention, his regulation is necessary and appropriate to carry out the laws administered by the Department. *See* 38 U.S.C. § 501(a).

Further, the Court notes that the language of § 3.654(b)(2) has remained unchanged since 1962. *See* 27 Fed. Reg. 11,886 (Dec. 1, 1962). Despite ample opportunity to modify section 5304(c) or circumscribe this regulation, Congress has left both untouched for over half a century. *See Heino v. Shinseki*, 24 Vet.App. 367, 375 (2011) (holding that Congress's failure to reject the Secretary's construction of a statute or circumscribe its regulation "indirectly indicated" its "sanction[]" of the regulation), *aff'd*, 683 F.3d 1372 (Fed. Cir. 2012).

Moreover, the Court is not persuaded that the supplemental authorities submitted by the appellant compel finding the Secretary's regulation arbitrary and capricious. As noted above, the appellant asserts that veterans who do not inform VA of their return to active duty may, in the end, receive and retain more monthly benefits than veterans, like the appellant, who waive benefits during a period of active service but who do not inform VA of their release within 1 year following release from service. The Secretary, however, is charged with managing compensation benefits for all veterans and the appellant has not demonstrated that it is unreasonable to craft rules with the expectation that they will be followed. *Cf. Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976) ("Perfection in making the necessary classifications is neither possible nor necessary.").

11

The Court thus concludes that VA's decision to predicate the effective date of recommencement of benefits on the date of the application therefor is not "arbitrary, capricious, or manifestly contrary to" section 5304(c). *Chevron*, 467 U.S. at 844.

Because the Court finds § 3.654(b)(2) a valid exercise of the Secretary's rulemaking authority, the Court must turn to the appellant's alternative arguments that equitable tolling is warranted or that VA deprived him of his constitutional right to due process. The Court will address his argument for equitable tolling first. *See Bucklinger v. Brown*, 5 Vet.App. 435, 441 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)).

### D. Equitable Tolling

As noted above, the appellant argues that VA provided misleading notice regarding the 1-year period to submit a claim to recommence the payment of VA benefits and, therefore, the Court should apply its equitable tolling authority to afford him earlier effective dates of July 1, 2004, and August 1, 2005, the dates following his release from two periods of active duty, for the reinstatement of VA benefits. Although equitable tolling may be applied against the government in certain circumstances, such as "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), it is generally applied to toll a statute of limitations to allow a claim that would otherwise be time barred. *See*, *e.g.*, *Bove v. Shinseki*, 25 Vet.App. 136, 140 (2011) (per curiam order) (holding that the 120-day period in 38 U.S.C. § 7266(a) is subject to equitable tolling).

Both the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) and this Court have considered whether equitable tolling may be applied to statutes that govern the effective date of awards of VA benefits and authorities that operate similar to effective-date provisions, and have found that it may not. *See Andrews v. Principi*, 351 F.3d 1134, 1138 (Fed. Cir. 2003); *Noah v. McDonald*, 28 Vet.App. 120, 128-29 (2016). Statutes and regulations that "merely indicate when benefits may begin, not whether a veteran is entitled to benefits at all," are not statutes of limitation subject to equitable tolling. *Noah*, 28 Vet.App. at 129; *see Andrews*, 351 F.3d at 1138 ("Passage of the [1]-year period in [38 U.S.C.] § 5110(b)(1) for filing a claim of disability

12

compensation . . . does not foreclose payment for the veteran and thus cannot be construed as establishing a statute of limitations."); *Noah*, 28 Vet.App. at 129 ("[T]he 1-year period provided in 38 U.S.C. § 3003(a) [(1981)] to submit evidence following VA's notification of the evidence necessary to complete the application cannot be construed as a statute of limitations.").

Here, the Court agrees with the Secretary that § 3.654(b)(2) is not a bar to VA benefits and does not contain a statute of limitations that may be equitably tolled. Rather, the regulation governs the date VA benefits may be resumed following release from active duty, which is dependent on when the veteran files a claim to recommence payment of benefits. In that regard, it operates similar to effective-date provisions for awards of VA benefits, which the Federal Circuit in *Andrews* unequivocally held may not be equitably tolled, 351 F.3d at 1138, and the statute and regulation at issue in *Noah*, 28 Vet.App. at 128-29.

The appellant does not dispute that § 3.654(b)(2) is not a statute of limitations. Instead, he argues that "the Board *treated* [§] 3.654(b)(2) as a statute of limitations in finding that, because [he] did not notify VA of his separation from active duty within [1] year of the date of separation, he had *waived* his right to an earlier effective date." Appellant's Br. at 13. Hence, he contends that the Board's "application of [§] 3.654(b)(2) . . . does not fall within the category of VA regulations that may evade equitable tolling." Appellant's Br. at 13 (citing *Noah*, 28 Vet.App. at 127).

His argument is not persuasive. First, it is clear from the Board decision as a whole that, in applying § 3.654(b)(2), the Board determined that the effective date for resuming payment of VA benefits must be based on the date of the appellant's claim—January 20, 2009. R. at 8-9; *see Janssen v. Principi*, 15 Vet.App. 370, 379 (2001) (per curiam) (rendering a decision on the Board's statement of reasons or bases "as a whole"). And, because the claim was filed more than 1 year after his release from active duty, a date more than 1 year prior to the date of the claim was impermissible. R. at 9. Although application of the regulation to the undisputed facts precluded an earlier effective date, it did not operate as a complete bar to benefits.

Second, even if the Board *treated* the regulation as a statute of limitations, the appellant cites no authority to support the proposition that the Court may apply equitable tolling under that circumstance. The Court thus need not address this argument further. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain undeveloped arguments); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

E. Due Process

The Fifth Amendment to the U.S. Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). An essential principle of due process is that deprivation of a protected interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). The Court reviews constitutional questions de novo. *See Buzinski v. Brown*, 6 Vet.App. 360, 365 (1994).

Nearly 10 years ago, the Federal Circuit held that a veteran's entitlement to disability benefits is a property interest protected by the Due Process Clause. *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). The amount of process that is constitutionally due depends on the situation and generally requires consideration of three distinct factors: "[T]he private interest that will be affected by the official action"; "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and "the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The appellant argues that VA violated his constitutional right to due process because the August 2003 VA Form 21-8951 and the RO's December 2003 letter "effectively misled [him] into believing that there was no deadline for him to inform VA of his separation from active duty." Appellant's Br. at 16; *see* R. at 1222 (December 2003 letter: "When you have been released from active duty, please provide our office with a copy of your DD[-]214, so that we may re-instate your benefits."), 1233 (August 2003 VA Form 21-8951: "This waiver will remain in effect . . . unless you notify VA otherwise in writing."). At oral argument, he asserted that, because the notice was silent regarding when payment would be resumed, a reasonable person would not think that a failure to notify VA within a particular time frame would result in a forfeiture of benefits. Oral Argument at 9:20-10:04. He thus maintained that the December 2003 letter was *affirmatively* misleading: He argued that VA told him that he needed to submit his DD-214s but did not tell him any other information. So, VA "affirmatively misled him in the sense that he was told he needed to do 'A' and, if he did 'A,' he would get his benefits reinstated." *Id.* at 10:30-11:00.

14

The Court need not reach the question whether VA provided misleading notice because, even assuming the notice was misleading, to prevail on his argument, the appellant must also show that he relied to his detriment on the allegedly misleading notice. *See Noah*, 28 Vet.App. at 133; *see also Day v. Shalala*, 23 F.3d 1052, 1066 (6th Cir. 1994) (although the denial notice "failed to satisfy the requirements of due process, the only claimants who could have been injured by the inadequacy are those who detrimentally relied on the inadequate denial notice"); *Burks–Marshall v. Shalala*, 7 F.3d 1346, 1349 (8th Cir. 1993) (the appellant has no standing to raise a due process issue where he "has not shown that the alleged deficiency in the notice had any connection in fact with h[is] own failure to seek review of" the denial of his claim). "Without such reliance, the injury is not fairly traceable to the challenged action." *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995).

Here, it is undisputed that the appellant *knew* that he needed to inform VA that he had been released from active duty to reinstate his benefits; he contends only that his statements and testimony reflect that he relied to his detriment on the allegedly misleading notice. Appellant's Br. at 16 (citing R. at 644 (Nov. 2015 testimony that the RO "didn't clarify" in 2003 that VA could only make payments 1 year prior to the date of his request), 1193 (Sept. 2009 NOD noting that the December 2003 letter "did not address the [1-]year requirement for informing . . . VA of my release from active duty")). But he does not explain how his statements reflect more than a general lack of knowledge of the regulation.

The Court addressed a similar situation in *Jernigan*. In that case, the appellant argued that VA's notice, which failed to inform her of the timeframe to return a formal application, was misleading or confusing. 25 Vet.App. at 229. Without determining whether VA had a duty to notify or whether the notice was defective, the Court concluded that the appellant failed to demonstrate that she relied to her detriment on the purportedly misleading notice. *Id.* Pertinent to resolution of this appeal, the Court rejected the notion that "one could presume that [the claimant relied on the allegedly misleading notice] from the notice itself and the subsequent delay in submitting a formal application." *Id.* The Court stated that the appellant had not cited any authority for such a presumption, "and our caselaw does not allow it." *Id.* The Court concluded: "'The record simply does not support any assertion that the notice lulled the appellant into failing to act, and [her] arguments must be rejected because they are not supported by any demonstrable prejudice.'" *Id.* (quoting *Edwards v. Peake*, 22 Vet.App. 29, 35 (2008), *aff'd sub nom. Edwards v. Shinseki*,

15

582 F.3d 1351 (Fed. Cir. 2009)); *see id.* at 231 (rejecting the appellant's due process argument in part due to the lack of "evidence that [she] relied on VA's allegedly misleading notice to her detriment"); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error).

Similarly, here, the record does not support the assertion that the appellant detrimentally relied on the allegedly misleading notice. *See Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (holding that this Court's statutory duty to take due account of the rule of prejudicial error permits the Court "to go outside of the facts as found by the Board to determine whether an error was prejudicial by reviewing 'the record of the proceedings before the Secretary and the Board'" (quoting *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007))); *Vogan v. Shinseki*, 24 Vet.App. 159, 164 (2010) ("[I]n assessing the prejudicial effect of any error of law or fact, the Court is not confined to the findings of the Board but may examine the entire record before the Agency, which includes the record of proceedings."). The record is silent from December 1, 2003, until January 20, 2009, when the appellant requested that his benefits be reinstated. Although he asserted in his NOD and Board testimony that the 2003 documents did not "clarify" that payments could only be resumed up to 1 year prior to the date of his request, he has not argued that they lulled him into inaction; rather, as noted by the Board, the appellant testified that "between that time period of 2003 until 2009, I kind of forgot about it because I'm in the Guard and it was kind of like my full-time job." R. at 643; *see* R. at 9. The Court thus concludes that the appellant has not met his burden of demonstrating that any due process error was prejudicial to the outcome of his appeal. *See Jernigan*, 25 Vet.App. at 231; *see also Sanders*, 556 U.S. at 409; *Berger v. Brown*, 10 Vet.App. 166, 169 (1997).

Considering the foregoing, and the undisputed fact that the appellant did not file a claim for reinstatement of benefits until January 20, 2009, the Board did not clearly err when it determined that an effective date prior to February 1, 2008, for the reinstatement of benefits was not warranted. *See* 38 U.S.C. § 7261(a)(4); *Evans v. West*, 12 Vet.App. 396, 401 (1999); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990); 38 C.F.R. § 3.654(b)(2).

### III. CONCLUSION

After consideration of the parties' pleadings, oral argument, and a review of the record, the Board's July 20, 2017, decision is AFFIRMED.

GREENBERG, *Judge*, dissenting: I respectfully dissent. "I would stop this business of making up excuses for judges to abdicate their job of interpreting the law, and simply allow the court of appeals to afford 'a claimant' its best independent judgment of the law's meaning." *Kisor v. Wilkie*, No. 18-15, 2019 WL 2605554 (U.S. June 26, 2019) (Gorsuch, J. concurring), *vacating and remanding Kisor v. Shulkin*, 869 F.3d 1360 (Fed. Cir. 2017), *aff'g Kisor v. McDonald*, No. 14-2811, 2016 WL 337517 (Vet. App. Jan. 27, 2016) (mem. dec.). The majority opinion reflects nothing more than a rubber stamping of the Government's attempt to misuse its authority granted under 38 U.S.C. § 501(a). The Secretary may *only* prescribe rules and regulations that are "necessary and appropriate to carry out the laws administered by the Department." 38 U.S.C. § 501(a). The statute already delineates the period for which veterans may not receive VA benefits – while they are on active duty. 38 U.S.C. § 5304(c). Section 3.654(b) does not merely "create a mechanism by which VA manages compensation benefits when veterans return to active duty," as the majority states, *ante* at 9, it also creates an unnecessary and inappropriate impediment to a veteran receiving benefits he has already established entitlement to. The fact that VA could have adopted a regulation that prescribed the procedure of reinstating benefits without including an effective date provision is dispositive of whether 38 C.F.R. § 3.654(b) is a "necessary or appropriate" regulation. The Secretary has exceeded his statutory authority here at the expense of service-connected veterans who were called back to active duty. For this reason, I dissent.

17